[No. 36763.    Department Two.    September 17, 1964.]

ARCADIO ROCHA, *Respondent*, v. McCLURE MOTORS, INC., *Appellant*.*

*Reported in 395 P. (2d) 191.

*William D. Aiken*, for appellant.

*Gess & Hurson*, for respondent.

DONWORTH, J.—In this case a conditional sales vendor appeals from a judgment holding him liable for the conversion of a truck sold to respondent on a conditional sale contract. Because the action concerns a dispute over the terms of the contract, the facts relating to the transaction are set out below in detail.

Arcadio Rocha, respondent, purchased a 1961 Ford truck on a conditional sale contract from McClure Motors, Inc., appellant. The sale was made by Frederick Rougk, one of appellant's salesmen. The buyer's order gave the description of the vehicle purchased, and listed 14 items as additional accessories to be attached to the truck. The purchase price written on the buyer's order was $4,270, plus $170 sales tax, and $120 license, transfer and registration fees, making a total purchase price of $4,560. Respondent traded in two vehicles as down payment, for which appellant allowed him a credit of $1,400. Accordingly, the buyer's order specified the final purchase price as being $3,160 ($4,560 less $1,400).

At the time of the sale, which, according to the testimony at the trial, was made June 14, 1961, respondent signed three documents. These were the conditional sale contract, the buyer's order, and a credit statement. Each contains a different date—July 3, 1961, June 15, 1961, and July 1, 1961, respectively—although they all were supposed to have been completed at the same time. A fourth document was introduced into evidence which is a schedule of payments which was attached to the conditional sale contract. This schedule was prepared sometime after the sale, according to the testimony of the president of appellant company, Harold A. McClure, and was then mailed to respondent by Pacific Finance Company, who had provided the conditional sale contract form.

After signing the above documents and delivering his two vehicles to appellant, respondent took possession of the truck. He began using it in his occupation of trucker by hauling farm products to market. When respondent took possession of the truck, three of the fourteen accessory items had not arrived and were yet to be installed on the truck. The salesman had noted on the buyer's order that respondent was to receive a 30-gallon gas tank, wide disc rims, and a custom cab.

After taking possession of the truck, respondent made the first monthly payment of $60, which was due on the 25th of July, 1961. Thereafter, he received the payment schedule from the finance company, but, because he felt there were charges which exceeded the price he had agreed to pay on his contract with appellant, he objected to the amount stated on the schedule. At the time of his objection respondent was informed by the salesman, Rougk, that nothing could be done because Mr. McClure was not present.

There is a factual dispute as to the purchase price of the truck, because, on the face of the documents presented to the trial court, there is no clear indication of what amount was contemplated by the parties as the final price. All three documents containing respondent's signature, as well as the payment schedule, appear to indicate that the balance of the purchase price (after the deduction for the trade-in allowance) was $3,160. With the exception of the notation "payment schedule attached," nothing else is written on the conditional sale contract, or on the buyer's order. The payment schedule states the total price as $4,260, but there are no figures listed which, when added together, reach that total. The credit statement contains the $3,160 total and then adds to that amount $1,000, which is labeled "other charges, describe ................." A total is then given as $4,260, which leaves $100 still completely unaccounted for.

The remaining facts that need to be stated are summarized as follows in the trial court's findings of fact Nos. 3, 7, and 8:

"III. That the plaintiff was born and educated in Mexico and does not read English. Plaintiff could not read or did

not have read to him the documents he signed when entering into the agreement with the defendant corporation.

" . . .

"VII. That on or about the 19th day of September, 1961, the defendant's President, Harold McClure, went to Warden, Washington where he demanded possession of the truck from the plaintiff for the reason that the plaintiff had failed to make the August and September, 1961 payments on the contract. The plaintiff was able to make the payments and agreed to make the payments upon the defendant correcting the contract and installing the accessories as agreed. That the defendant, through its president, Harold McClure, stated to the plaintiff that the salesman who handled the transaction had just left town on a two-week vacation, which statement was false, and was made to induce the plaintiff to turn the truck over to the defendant corporation pending the return of the salesman. It was agreed between the parties that the defendant would take possession of the truck and would hold same for 20 days, during which time the disputes regarding the contract would be corrected, however, it was necessary to wait for the return of the salesman as above-mentioned. The salesman, Fritz Rouck, never returned to his employment with the defendant.

"VIII. That subsequent to taking possession of the truck, and within the 20 day period agreed upon, the defendant placed the truck in the hands of a third party, and no effort was made to perform the contract by the defendant in installing the accessories or correcting the contract."

■■ At this point we should note that appellant assigns error to each of these findings, as well as to four others. With the exception of the finding covering damages, which will be considered separately, appellant has failed to direct any argument to those findings or to point out in its brief in what respects they are claimed to be objectionable. Therefore, those assignments of error must be deemed abandoned. *Hutchinson v. Port of Benton*, 62 Wn. (2d) 451, 383 P. (2d) 500 (1963), and cases cited. Furthermore, the findings of the trial court are supported by substantial, credible evidence in the record. *Allied Stores Corp. v. Department of Labor & Industries*, 60 Wn. (2d) 138, 372 P. (2d) 190 (1962), and cases cited.

It can be seen from the facts set forth above that respondent could reasonably dispute the terms of the sale based upon the several documents admitted in evidence at the trial. There is no clear statement of the precise amount of the purchase price, the rate of interest payable, or any other charges which the finance company may have added. The payment schedule was attached to the contract sometime after its execution and respondent specifically objected to the schedule upon its receipt. Also, the contract had not been fully performed by appellant and, as the trial court found, appellant made no attempt to attach the accessories respondent still had coming.

■ Appellant's principal contention is that it was entitled to repossess the truck from respondent on September 19, 1961, because respondent was then in default. We do not find it necessary to decide whether or not appellant had a right to repossess the truck under the contract, because we are of the opinion that no repossession ever occurred. Respondent merely gave appellant possession of the vehicle for a 20-day period, during which time the contract dispute was to be settled. Appellant represented to respondent that he wished to consult the salesman, Mr. Rougk, who had made the sale. The latter was supposed to be on a 2-weeks' vacation at that time. As it turned out, Mr. Rougk never did resume his employment with appellant.

The evidence clearly established an agreement between the parties to extend the time for compliance with the terms of the contract for a 20-day period. While there is no clear waiver of prompt performance, which is established where a pattern of acceptance of late payments precludes a sudden forfeiture without notice (see *Central Ins. Co. of Baltimore v. Ehr*, 18 Wn. (2d) 489, 139 P. (2d) 701 (1943)), there is a similarity in the position of the parties. The seller, after waiving his right to repossess, or by extending the time, must give to the buyer notice of his intent to repossess. The mere fact that the vendor is in possession does not establish a repossession. See *Crutcher v. Scott Pub. Co.*, 42 Wn. (2d) 89, 253 P. (2d) 925 (1953).

In 5 Williston on Contracts (3d ed.) § 736, p. 479, is the following discussion on repossession:

"It is obviously possible, however, for the seller to resume possession of the goods without intending thereby to rescind the contract. He may, it would seem, resume possession without forfeiting or claiming to forfeit the buyer's right to pay any unsatisfied portion of the price and thereby perfect his ownership, but merely to increase his own security. Thus, it has been stated: 'The Courts on numerous occasions have recognized that a seller's retaking or repossessing under an express or implied contract provision, does not necessarily demand the conclusion that in so doing he has elected to rescind; and, the application of the election doctrine must be modified by the facts of the particular case.'

"Nevertheless, the mere reclaiming of possession seems generally regarded as an election to rescind; and it seems probable that it is in most cases a correct inference from the reclaiming of possession by the seller that he intends to terminate the buyer's interest in the goods."

■ Also, we must keep in mind the policy of the state expressed in *Hyrkas v. Knight, ante* pp. 733, 734, 393 P. (2d) 943 (1964), which quotes from *State ex rel. Foley v. Superior Court*, 57 Wn. (2d) 571, 574, 358 P. (2d) 550 (1961), as follows:

" ' . . . forfeitures are not favored in law and are never enforced in equity unless the right thereto is so clear as to permit no denial. . . .' "

See *Dill v. Zielke*, 26 Wn. (2d) 246, 173 P. (2d) 977 (1946), and cases cited.

■ Viewing the facts of the present case in the light of the above discussion, the only conclusion that we can reach is that appellant did not repossess the truck from respondent at the time it took possession. There is clearly established by the record (and the trial court so found) that the parties agreed to extend the time for performance by 20 days to allow the clearing up of contract disputes. Also, there is no clear right to repossess shown. Respondent's interest in the truck as vendee under the conditional sale contract was never terminated. Therefore, appellant's act

in giving up possession to a third party to whom the truck was sold by appellant (no date of that sale is shown in the record) amounted to a conversion for which respondent is entitled to compensation. We are of the opinion that the trial court was correct in holding that appellant converted the truck.

Appellant's only remaining assignment of error that need be considered is directed to the trial court's finding of fact No. 9 and conclusion of law No. 3, which are as follows:

"As a result of the wrongful acts and conversion by the defendant, of the truck, the plaintiff was damaged in the sum of $500.00 per month for two months, representing a loss of net profits. Furthermore, plaintiff is entitled to a return of down payment and payment made on the contract with interest." Finding No. 9.

"That as a result of the wrongful conversion by the defendant of the plaintiff's vehicle the plaintiff should receive judgment in the sum of $1,400.00, representing the down-payment with interest at 6% per annum from June 15, 1961, plus a $60.00 payment made on the contract, with interest thereon at the rate of six (6%) per cent per annum from July 27, 1961, together with the sum of $1,000.00 for loss of net profits, and for costs and disbursements incurred herein." Conclusion of law No. 3.

Appellant addresses his argument only to that portion allowing respondent $1,000 ($500 for each of two months) for loss of net profits. Therefore, we deem that the other items of damage assessed by the trial court are correct.

Appellant's claim is that there is not sufficient evidence to support the finding of $1,000 damages, and that the amount of damages should be reduced because respondent was under a duty to mitigate his damages.

In the case of *Holmes v. Raffo*, 60 Wn. (2d) 421, 429, 374 P. (2d) 536 (1962), we stated the following regarding the loss of use of an automobile:

"The rule with respect to loss of use of an automobile is that the owner may recover, as general damages, the use value of which he is deprived because of the defendant's wrongful act. *Stubbs v. Molberget*, 108 Wash. 89, 182 Pac. 936, 6 A.L.R. 318 (1919); *Jellum v. Grays Harbor Fuel Co.*,

160 Wash. 585, 295 Pac. 939 (1931); *Norris v. Hadfield, supra* [124 Wash. 198, 213 Pac. 934, 216 Pac. 846 (1923)]; *Western Mach. Exch. v. Northern Pac. R. Co.*, 142 Wash. 675, 254 Pac. 248 (1927). . . .

"Although there is not complete unanimity in the case law of all jurisdictions, the majority of the cases recognize the plaintiff's right to recover for loss of use whether the automobile which has been injured has been used by its owner for business, for family purposes or simply for pleasure. *Norris v. Hadfield, supra*; *Cook v. Packard Motor Car Co. of New York*, 88 Conn. 590, 92 Atl. 413 (1914); *Johnson v. Scholz*, 93 N.Y.S. (2d) 334, 276 App. Div. 163 (1949); *Eschinger v. United Mut. Fire Ins. Co.* (Mun. Ct. App., D. C.), 61 A. (2d) 725 (1948); *Malinson v. Black*, 83 Cal. App. (2d) 375, 188 P. (2d) 788 (1948).

"A definitive statement of the guiding principle involved in cases of this nature appears in a concurring opinion to the decision in *Cook v. Packard Motor Car Co. of New York, supra*:

" 'Since compensation for injury to personal property is the cardinal rule for the measure of the damage, there would seem to be no room for affording a recovery for a deprivation of the use of an automobile devoted to business, and denying it to one devoted to pleasure uses. The value of the use of personal property is not the mere value of its intended use but of its present use. The value of an article to its owner, as Sedgwick points out, lies in his right to use, enjoy and dispose of it. These are the rights of property which ownership vests in him, and whether he, in fact, avails himself of his right of use does not in the least affect the value of his use. 1 Sedgwick on Damages (9th Ed.) § 243a. His right to the use of his property is not diminished by the use the owner makes of it. His right of user, whether for business or pleasure, is absolute, and whoever injures him in the exercise of that right renders himself liable for consequent damage. . . .' "

Respondent presented evidence that he was using the truck in the business of hauling farm produce for hire. According to the record, one of respondent's most active hauling periods each year was from the middle of September to the end of November. Because of the seasonal nature of the trucking respondent conducted, the 2 months (October and November) immediately following the conversion was a reasonable period for the court to use in the

computation of his damages. There was substantial, credible evidence to support the trial court's finding of fact and its conclusion of law that respondent was damaged, as a result of appellant's wrongful conversion of the truck, in the amount of $1,000 ($500 for each of the 2 months).

We do not think there is merit in appellant's contention that respondent should have mitigated his damages. Under the facts of this case, respondent was without a vehicle at the time of the conversion and only had money available that would be sufficient to make the payments due on the contract when the dispute was to be settled within 20 days. It seems to us unreasonable to require respondent to go further in debt to mitigate his damages by buying or renting another truck since he was deceived by appellant's agreement to retain possession of the truck for 20 days and since the hauling season was so short. Our decisions on which appellant relies apply only where means to minimize damages are reasonably available to the injured party. Such is not the case here.

We find no reversible error in the trial court's disposition of this case. Therefore, the judgment appealed from is affirmed.

OTT, C. J., FINLEY, WEAVER, and HAMILTON, JJ., concur.