A. E. HAGBERG and Carl Burnett,
Appellants,

v.

ALASKA NATIONAL BANK, Appellee.

No. 3580.

Supreme Court of Alaska.

Oct. 27, 1978.

Warren C. Colver, Anchorage, for appellants.

Hoyt M. Cole, G. Rodney Kleedehn, Cole, Hartig, Rhodes, Norman & Mahoney, Anchorage, for appellee.

OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, Justices.

MATTHEWS, Justice.

In 1976, the law pertaining to deed of trust sales, AS 34.20.070, was amended to permit the obligor under a note secured by a deed of trust to terminate a non-judicial deed of trust sale by paying all arrearages except those due because the acceleration clause [1] in the note has been exercised.[2] Prior law required payment of the full indebtedness when acceleration clauses were exercised. The question in this case is whether application of the 1976 amendment to deeds of trust executed before but foreclosed after the amendment became effective is prohibited by the contract clause of the Federal Constitution, which provides: "No state shall . . . pass any law impairing the Obligations of Contract.[3]

## I

■ This case is here on an appeal from the Superior Court's denial of a preliminary injunction seeking to stop a non-judicial deed of trust foreclosure sale. The order is not a final judgment and the appeal is therefore improper.[4] However, we treat the appeal as a petition for review under Appellate Rules 23 and 24, limited to the issue of the application of the 1976 amendment of AS 34.20.070(b) to this case, because a controlling question of law is presented on which there is substantial ground for difference of opinion and present review will materially advance the ultimate termination of the litigation.[5]

Alaska National Bank is the holder of a note in the principal sum of $247,197.76 which is secured by a deed of trust executed in 1975 covering two parcels of real estate. The note provides for interest at ten percent to begin on October 1, 1976 and for installment payments of $2,059.99 commencing December 1, 1976, and to continue monthly until November 30, 1977, when higher installments are due. The maker of the note, William Wester, made the first payment and no others. On April 7, 1977, the trustee under the deed of trust recorded a notice of default and sale, scheduling a non-judicial foreclosure sale. The default clause of the notice stated that the breach for which default was declared was nonpayment and that the amount presently due was $247,197.76 plus accrued interest thereon which was erroneously stated to be at the rate of thirteen percent from July 1, 1975. Wester then sold his interest in the properties to appellants who sued to enjoin the sale. They sought and were refused a temporary injunction pending litigation.

Appellants claimed in their August 1977 motion for a preliminary injunction that Wester had tendered the payment arrearages on several occasions, but the bank had refused them.[6] They also claimed that the bank had refused to state the amount of arrearages and that a representative of the bank had stated to appellants' counsel that the bank would not accept payment of just the arrearages, but would insist on payment of the entire amount of the note.[7] The bank did not controvert these contentions.

---

1. An acceleration clause in an installment note typically provides that, upon default in the payment of any installment, the entire principal sum and accrued interest becomes due immediately at the option of the holder of the note.

2. The 1976 amendment to AS 34.20.070(b) provides in pertinent part:
   At any time before the sale, if the default has arisen by failure to make payments required by the trust deed, the default may be cured by payment of the sum in default other than the principal which would not then be due if no default had occurred, plus attorney fees or court costs actually incurred by the trustee due to the default. If under the same trust deed notice of default under this subsection has been recorded two or more times previ-

ously and the default has been cured under this subsection, the trustee may elect to refuse payment and continue the sale.

3. U.S.Const., art. 1, § 10, cl. 1.

4. Appellate Rule 5.

5. We have followed this procedure in several cases. *E. g., Muller v. State*, 478 P.2d 822 (Alaska 1971); *Leege v. Strand*, 384 P.2d 665 (Alaska 1963); *Stokes v. Van Seventer*, 355 P.2d 594 (Alaska 1960).

6. Wester signed an affidavit to that effect.

7. Counsel for appellants signed an affidavit so stating.

Both the sale and the hearing on the motion for preliminary injunction were scheduled for Monday, August 15, 1977. On Friday, August 12, the bank advised appellants' counsel that the arrearages were $78,489.71 plus attorney's fees and on August 15 the bank filed an affidavit to that effect which does not show how that figure was reached. The appellants disputed this calculation and were unable to pay it in the short time before the sale.[8] The sale was stayed until August 22 by the Superior Court to give appellants an opportunity to seek relief in this court. We conditioned a stay pending litigation on, among other things, bringing current all payments due on the property. This condition was not fulfilled and the sale was held on August 22. The bank purchased the property for an offset bid of $281,000.

## II

The bank's position on appeal is that it had no duty to accept merely the amount of the arrearages after it had begun the non-judicial foreclosure process. It claims that to apply the 1976 amendment to AS 34.20.-070(b) to a deed of trust executed before the effective date of that amendment would violate the contract clause of the Federal Constitution.[9]

Cases interpreting the contract clause of the Federal Constitution make a distinction between contract rights and contract remedies. A remedy may be modified as long as the result does not unreasonably affect the value of the right. Chief Justice Hughes, writing for the court in *Home Building & Loan Ass'n. v. Blaisdell,* 290 U.S. 398, 430, 54 S.Ct. 231, 237, 78 L.Ed. 413, 424 (1934), summarized the law on this subject.

Chief Justice Marshall pointed out the distinction between obligation and reme-dy. *Sturges v. Crowninshield,* supra (4 Wheat. p. 200 [17 S.Ct. 122], 4 L.Ed. 550). Said he: "The distinction between the obligation of a contract, and the remedy given by the legislature to enforce that obligation, has been taken at the bar, and exists in the nature of things. Without impairing the obligation of the contract, the remedy may certainly be modified as the wisdom of the nation shall direct." And in *Von Hoffman v. Quincy,* supra (4 Wall. pp. 553, 554 [71 U.S. 535], 18 L.Ed. 409, 410) the general statement above quoted was limited by the further observation that "It is competent for the States to change the form of the remedy, or to modify it otherwise, as they may see fit, provided no substantial right secured by the contract is thereby impaired. No attempt has been made to fix definitely the line between alterations of the remedy, which are to be deemed legitimate, and those which, under the form of modifying the remedy, impair substantial rights. Every case must be determined upon its own circumstances." And Chief Justice Waite, quoting this language in *Antoni v. Greenhow,* 107 U.S. 769, 775, 2 S.Ct. 91, 27 L.Ed. 468, 471, added: "In all such cases the question becomes therefore, one of reasonableness, and of that the legislature is primarily the judge."

We find no violation of the contract clause by the application of the 1976 amendment to pre-existing deeds of trust. An obligor on a note must still pay the principal and interest and, in case of default, the beneficiary is still entitled to foreclosure and to his costs. The beneficiary is deprived of his right to insist on payment of the entire debt as a condition to stopping the non-judicial foreclosure process where the overdue amount is brought

---

8. The correctness of the bank's claimed arrearage in payment, $78,489.71, is not self-evident. As of August 1977, eight installments of $2,059.99, including interest, were due. Although the bank may have paid prior liens, insurance, or taxes and added these expenditures to overdue installments, such payments are not reflected in the record.

9. The bank does not argue that the amendment was not meant to apply to existing deeds of trust. Such a position would be difficult to maintain since the amendment is structurally an intrinsic part of a statutory subsection applicable to all deeds of trust and no limitation is expressed.

current and costs are paid. However, the defaulting obligor may bring his payments current and stop the non-judicial foreclosure as a matter of right only twice; the third time the beneficiary may insist on payment in full. This modification does not reduce the value of a beneficiary's note or the security ensuring payment in any perceptible way. The contract clause of the Constitution is "intended to preserve practical and substantial rights, not to maintain theories."[10] The amendment does no more than codify a form of relief from forfeiture which courts have often exercised.[11]

The Supreme Court of the United States has upheld statutory changes having far more impact on contract rights than the present ones do. For example, in *East New York Savings Bank v. Hahn,* 326 U.S. 230, 66 S.Ct. 69, 90 L.Ed. 34 (1945), a statute suspending mortgage foreclosures for the tenth consecutive year was sustained. In *El Paso v. Simmons, supra* note 10, state land sale contracts allowed contract purchasers an unlimited time within which to redeem after a forfeiture; a later statute placing a five-year limit on redemptions was upheld. In *Honeyman v. Jacobs,* 306 U.S. 539, 59 S.Ct. 702, 83 L.Ed. 972 (1939), a statute barring a mortgagee who purchased at a foreclosure sale from obtaining a deficiency judgment if the value of the property at least equaled the amount of the debt was upheld, notwithstanding the fact that under prior law the mortgagee could obtain a deficiency judgment for the difference between the debt and the foreclosure sale price.

■■■ The right of an obligor to call a halt to a nonjudicial foreclosure by paying costs and by bringing his payments current carries with it an implied duty on the part of the beneficiary to accept a tender of the sum in default and to seasonably advise the obligor on request of the amount in default.[12] Here there was unrefuted evidence presented in support of the motion for preliminary injunction that both of these duties had been violated. The preliminary injunction, therefore, should have been granted.

We remand this case to the Superior Court with instructions to enter an order setting aside the foreclosure sale and to conduct further proceedings consistent with this opinion.

---

**10.** *El Paso v. Simmons,* 379 U.S. 497, 515, 85 S.Ct. 577, 587, 13 L.Ed.2d 446, 458 (1965) *quoting Davis v. Mills,* 194 U.S. 451, 24 S.Ct. 692, 48 L.Ed. 1067, 1071 (1904).

**11.** *See Moran v. Holman,* 501 P.2d 769, 771 (Alaska 1972); *McCormick v. Grove,* 495 P.2d 1268, 1269 (Alaska 1972); *Department of Revenue v. Baxter,* 486 P.2d 360, 365 (Alaska 1971); *Jameson v. Wurtz,* 396 P.2d 68, 74 (Alaska 1964); *Land Development, Inc. v. Padgett,* 369 P.2d 888, 889 (Alaska 1962); *Arizona Coffee Shops v. Phoenix Downtown Park Ass'n.,* 387 P.2d 801, 803 (Ariz.1963); *In Re Wurtz's Estate,* 520 P.2d 1308, 1313 (Kan.1974); *Smith v. Zepp,* 567 P.2d 923, 928 (Mont.1977); *Farmer v. Groves,* 555 P.2d 1252, 1255 (Or.1976); *Rocha v. McClure Motors,* 395 P.2d 191, 194 (Wash.1964); Rosenthal, *The Role of Courts of Equity in Preventing Acceleration Predicated Upon a Mortgagor's Inadvertent Default,* 22 Syracuse L.Rev. 897 (1971).

**12.** *See Lichty v. Whitney,* 80 Cal.App.2d 696, 182 P.2d 582, 585 (1947).