*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| JEFFERY A. WENDT, ) | |
| ) | Supreme Court No. S-17568 |
| Appellant, ) | |
| ) | Superior Court No. 3AN-17-11007 CI |
| v. ) | |
| ) | O P I N I O N |
| BANK OF NEW YORK MELLON ) | |
| TRUST COMPANY, N.A., ) | No. 7532 – May 21, 2021 |
| ) | |
| Appellee. ) | |
| ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Eric A. Aarseth, Judge.

Appearances: James J. Davis, Jr., Alaska Legal Services Corporation, Anchorage, for Appellant. Richard Ullstrom, R. Crabtree, APC, Anchorage, for Appellee.

Before: Bolger, Chief Justice, Winfree, Maassen, Carney, and Borghesan, Justices.

MAASSEN, Justice.

## I.   INTRODUCTION

A homeowner seeks to rescind a foreclosure sale, arguing that the notices he received before the sale were deficient because they lacked information required under state and federal law. The notices were sent by a law firm acting on behalf of a bank, which by assignment was the beneficiary of the deed of trust. The superior court

granted summary judgment to the bank, determining that the law firm's communications on the bank's behalf did not violate the federal Fair Debt Collection Practices Act (FDCPA), the Alaska Unfair Trade Practices and Consumer Protection Act (UTPA), or the state nonjudicial foreclosure statute, and that the homeowner was not entitled to relief. The homeowner appeals.

We conclude that the bank was not a debt collector subject to the FDCPA, that derivative debt-collector claims under the UTPA were not viable either, and that there were no violations of state foreclosure law that would justify setting aside the foreclosure sale. We therefore affirm the superior court's judgment.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

In August 2005 Jeffery and Julie Wendt bought a home in Wasilla subject to a first deed of trust from General Motors Acceptance Corporation. In October the Wendts executed a second deed of trust for $30,000; this is the deed of trust at issue in this case. It identified Homecomings Financial Network, Inc. as the lender and Mortgage Electronic Registration Systems, Inc. as Homecomings's nominee and the beneficiary of the loan. The Wendts signed a third deed of trust on the property in December 2006.

Around May 2016 the Wendts fell behind in their payments on the second deed of trust. In March 2017 this debt was transferred from Homecomings to the defendant in this action, the Bank of New York Mellon Trust Company (the bank).

On April 14, 2017, the law firm Robinson Tait, on behalf of the bank, sent a letter to the Wendts informing them that they were in default and owed the bank $29,013.03 "including interest." The letter, titled "Notice Required by the Fair Debt Collection Practice Act," stated that the Wendts had 30 days to request verification of the debt and gave Robinson Tait's address and phone number. Five days later, on April 19, Robinson Tait served the Wendts with a notice of default. The notice said that the

Wendts owed $26,512.40 "plus accrued interest at a variable rate." It also stated that a foreclosure sale would take place on August 3, 2017.

On May 12 Robinson Tait sent the Wendts a second notice of default, stating its purpose as "to correct the recording district" listed in the first notice. But the second notice also changed the date of the foreclosure sale from August 3 to August 24 without highlighting the change. A nonjudicial foreclosure sale was accordingly held on August 24, and the bank bought the Wendts' home for $33,279.31. On October 3 Robinson Tait, acting on behalf of the bank, filed a complaint against the Wendts seeking their eviction.

### B.    Proceedings

In December 2017, while the eviction action was pending, Jeffery Wendt filed suit against Robinson Tait and the bank. He alleged that Robinson Tait, in the course of the nonjudicial foreclosure, breached its fiduciary duties and engaged in unfair trade practices in violation of the UTPA.[1] He brought a quiet title claim against the bank, alleging that he remained in possession of the home, retained "equitable title to the property," and was entitled to rescission of the foreclosure sale "so that Defendants can first comply with all of the aforementioned laws before they conduct a non-judicial foreclosure sale." Wendt amended his complaint two months later, adding a claim that the notices sent by Robinson Tait violated Alaska's foreclosure statutes by failing to inform him of the amount needed to cure or "how he might learn or discover this amount."

In April 2018 Robinson Tait filed for bankruptcy, and all further action against it was stayed. The bank then moved for summary judgment. It argued that neither it nor Robinson Tait had violated the UTPA, the state nonjudicial foreclosure

---

[1]    AS 45.50.471.

statute, or the FDCPA. The bank also argued that it was not responsible for Robinson Tait's conduct and that the superior court could not rescind an already completed foreclosure sale. Wendt opposed the motion and requested both a continuance under Alaska Civil Rule 56(f) and leave to file a second amended complaint adding claims against the bank for negligent hire, breach of the covenant of good faith and fair dealing, and negligent loan servicing.

The superior court granted the bank's motion for summary judgment and dismissed all of Wendt's claims. First, the court found that Robinson Tait's initial communication to the Wendts, the April 14 letter, did not violate the FDCPA because — as the United States Supreme Court had recently held[2] — the relevant portion of the Act did not apply to nonjudicial foreclosures. The court nevertheless went on to analyze all of the alleged deficiencies in the letter, concluding that it satisfied the FDCPA. The court also analyzed the notices of default and determined that they were "not confusing, misleading, legally deficient, or inconsistent with the initial communication letter." The court rejected Wendt's request that the foreclosure sale be declared void, concluding that the circumstances of the case did not reach the "unjust extremes" necessary to justify that extraordinary remedy. Finally, the court decided that the notices of default did not violate the Alaska nonjudicial foreclosure statute because the trustee's duty to inform the debtor of the amount necessary to cure the default arises when a debtor requests that information, and the Wendts never made such a request.

Wendt appeals.

## III. STANDARD OF REVIEW

"We review the 'grant of a summary judgment motion de novo, affirming

---

[2] *See Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1033, 1036 (2019) (holding that the "main coverage" of the FDCPA is inapplicable to businesses "engaged in . . . nonjudicial foreclosure proceedings").

if the record presents no genuine issue of material fact and if the movant is entitled to judgment as a matter of law.' "[3] "In this examination, we draw all reasonable inferences in favor of the nonmovant."[4] "Statutory interpretation raises questions of law to which we apply our independent judgment. We must adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[5]

## IV. DISCUSSION

### A. The Superior Court Correctly Concluded That The Bank Had Not Violated The FDCPA.

Wendt first argues that the superior court erred in deciding that the bank was not subject to the FDCPA. The FDCPA is a federal statute intended to "eliminate abusive debt collection practices by debt collectors."[6] The Act requires that debt collectors send an initial communication to the debtor containing basic information about the debt and notifying the debtor of the right to dispute it.[7]

Wendt argues that Robinson Tait was a "debt collector" as defined by the FDCPA, that Robinson Tait's initial communication violated the FDCPA in several ways,[8] and that the bank is liable for Robinson Tait's FDCPA violations. But we do not

---

[3]     *Espeland v. OneWest Bank, FSB*, 323 P.3d 2, 8 (Alaska 2014) (quoting *Erkins v. Alaska Tr., LLC*, 265 P.3d 292, 296 (Alaska 2011)).

[4]     *Id.*

[5]     *S.S.M. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 3 P.3d 342, 344 (Alaska 2000) (internal footnote omitted).

[6]     15 U.S.C. § 1692(e) (2018).

[7]     15 U.S.C. § 1692g(a) (2018).

[8]     Wendt alleges that the notice was deficient because it (1) was not written in language easily "understood by an 'unsophisticated debtor' "; (2) did not clearly state
(continued...)

need to address the merits of the FDCPA claims. The bank cannot be held directly liable under the FDCPA for making efforts to collect its own debt, and Wendt has not briefed a viable theory under which the bank would be liable for actions taken by Robinson Tait.

### 1. The bank is not subject to the FDCPA when making efforts to collect its own debt.

The provisions of the FDCPA that Wendt alleges were violated by the bank govern only the conduct of "debt collectors."[9] The FDCPA defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."[10] This definition — covering those who collect debts "owed or due another" — categorically excludes entities collecting debts on their own account.[11] The bank presented evidence on summary judgment that it had been assigned the debt and the deed of trust by the original creditor. It was identified as "the current creditor" in Robinson Tait's April 14 communication to the Wendts, and it was named as the assignee of the beneficial interest in both notices of default. Although Wendt's

---

[8] (...continued)
how much Wendt owed; (3) did not explain that the Wendts could dispute their debts "in writing;" (4) was "overshadowed" by the Notices of Default that were sent to the Wendts immediately thereafter; and (5) did not identify the original creditor.

[9] 15 U.S.C. § 1692g.

[10] 15 U.S.C. § 1692a(6) (2018).

[11] *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1721 (2017) (observing that "by its plain terms" the FDCPA "seems to focus our attention on third party collection agents working for a debt owner — not on a debt owner seeking to collect debts for itself").

complaint appeared to question the validity of the bank's status as assignee, on appeal he does not dispute the bank's ownership of the debt and the deed of trust.

Because the bank's efforts to collect its own debt were not subject to the FDCPA, it cannot be held directly liable for any deficiencies in the notice required by that federal law. This leaves the question of whether the bank may be liable for actions Robinson Tait took on its behalf.[12]

### 2. Wendt makes no viable argument that the bank is liable for Robinson Tait's alleged violations of the FDCPA.

Wendt made no claim against the bank in his complaint other than a quiet title claim based on the bank's status as the buyer of his home. The bank's summary judgment motion addressed that claim but also addressed Robinson Tait's alleged violations of the FDCPA and the UTPA "because they are being used to challenge or interfere with [the bank's] ownership of the Property." In his opposition, Wendt argued that the bank was responsible for Robinson Tait's actions because the bank's "duty of good faith and fair dealing in how it serviced this loan . . . includes not hiring incompetent and corrupt servicers and trustees." He asserted that the bank "was clearly negligent in allowing Robinson Tait, a known corrupt and incompetent trustee, to service this loan." Wendt also sought to amend his complaint to add claims against the bank for negligent hire, breach of the covenant of good faith and fair dealing, and "negligence for bad servicing and improper practices." When the superior court granted the bank's summary judgment motion, it also denied Wendt's motion to file his proposed amended complaint, reasoning that the various attempts to hold the bank liable for Robinson Tait's

---

[12] *See Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 108 (6th Cir. 1996) (holding that debt-owning bank was not debt collector and therefore not liable under FDCPA, unlike law firm it had hired to collect debt).

actions necessarily failed because of the court's ruling that Robinson Tait did not violate the law in the nonjudicial foreclosure process.

Wendt's appeal does not challenge the superior court's denial of his motion to amend the complaint, nor does he explicitly reassert his claims for negligent hire, breach of the covenant of good faith and fair dealing, or negligence in the bank's handling of the foreclosure. His opening brief asserts generally that both Robinson Tait and the bank violated the FDCPA, the UTPA, and Alaska's foreclosure statutes, but its more detailed description of the challenged conduct ascribes all violations to Robinson Tait. Only in his reply brief does Wendt specifically assert that the bank is liable for Robinson Tait's actions. He supports this claim with a procedural argument: that the bank, "[a]s the movant on summary judgment, . . . had the exclusive duty to submit evidence that 'it did not materially participate' in any of Robinson Tait's alleged misconduct" and failed to do so.

Wendt's "material participation" argument relies on *Alaska Trustee, LLC v. Ambridge*, in which we held that an individual could not be liable for violations of the FDCPA unless he met two conditions: (1) he was a debt collector, and (2) he had "taken an action that violates the FDCPA," which we further defined as requiring that the individual " 'materially participated' in the specific violation alleged."[13] In other words, a debt collector's mere proximity to an alleged FDCPA violation could not by itself make the debt collector liable for it. But the "material participation" test does not determine whether someone is a debt collector; it determines whether a debt collector can be held liable for a violation. Because the bank, as an entity collecting its own debt, is not a debt collector by definition, we do not need to reach the "material participation" element in

---

[13]     372 P.3d 207, 222-24 (Alaska 2016) (quoting *Del Campo v. Am. Corrective Counseling Serv., Inc.*, 718 F. Supp. 2d 1116, 1127 (N.D. Cal. 2010)).

this case. Simply stated, the FDCPA does not prohibit an entity like the bank from materially participating in the collection of its own debt.

Because the bank could not violate the FDCPA while collecting its own debt, and because Wendt has not articulated a viable theory for holding the bank liable for Robinson Tait's actions, we affirm the superior court's grant of summary judgment to the bank on Wendt's FDCPA claims.[14]

## B. The Superior Court Did Not Err By Deciding That The Bank Did Not Violate The UTPA.

Wendt also argues that the bank's debt collection practices violated the UTPA. But his perfunctory argument on this point rests entirely on the principle that any violation of the FDCPA is also a violation of the UTPA.[15] Because of our conclusion that the bank did not violate the FDCPA, we necessarily reject the argument that it violated the UTPA as well.

## C. Wendt Waived His Claim That The Notice Of Default Failed To Notify The Subsequent Lienholder As Required By State Law.

Wendt next argues that the bank violated the Alaska nonjudicial foreclosure statute by failing to send a copy of the notice of default to a subsequent lienholder, the holder of the third deed of trust on the property. Under AS 34.20.070(c)(4), a trustee must, within 10 days of recording the notice of default, mail a copy to "any person having a lien or interest subsequent to the interest of the trustee in the trust deed, where

---

[14] We "may affirm on any ground in the record, not only those argued by the parties." *Espeland v. OneWest Bank, FSB*, 323 P.3d 2, 8 (Alaska 2014).

[15] *See Ambridge*, 372 P.3d at 226 (observing that "a violation of the FDCPA is inescapably an 'unfair or deceptive act[] or practice[]' under AS 45.50.471(a)" because of legislative mandate that we consider Federal Trade Commission Act (FTCA) in interpreting UTPA, and the FDCPA expressly states that violation of it violates FTCA as well (alterations in original) (citing AS 45.50.545; 15 U.S.C. § 1692(a) (2012))).

the lien or interest appears of record or where the trustee or the beneficiary has actual notice of the lien or interest." The affidavit of mailing that accompanied the notice of default to the Wendts does not list the subsequent lienholder, and the bank does not seem to dispute Wendt's assertion that the subsequent lienholder was not notified of the sale.

But Wendt did not raise the subsequent lienholder argument in the superior court. "Arguments raised for the first time on appeal are generally waived, but those explicitly raised in the trial court may be expanded or refined in appellate argument."[16] Wendt did allege in his complaint that the notice of default "was not mailed to *prior* lienholders on the property, i.e., the holder of the first mortgage" (emphasis added), but he did not allege deficient notice to *subsequent* lienholders, either in his complaint or in his opposition to the bank's summary judgment motion. The superior court accordingly addressed the prior lienholder argument on summary judgment, noting that because "AS 34.20.070(c) requires notice to subsequent lienholders but not prior lienholders," the bank "complied with AS 34.20.070(c)." The court's order clearly assumed — reasonably, based on the parties' arguments — that there was no issue related to subsequent lienholders. Because neither the superior court nor the bank had the opportunity to address the subsequent lienholder issue before Wendt raised it on appeal, we consider it waived.[17]

### D. The Alleged Violations Of The Foreclosure Statute Do Not Make The Sale Inherently Unfair And Unreasonable.

Finally, Wendt argues that the notices of default violated state law

---

[16] *Adkins v. Collens*, 444 P.3d 187, 195 (Alaska 2019) (internal footnote omitted).

[17] *See Harvey v. Cook*, 172 P.3d 794, 802 (Alaska 2007) (observing that it would be "both unfair to the trial court and unjust to the opposing litigant" to allow a party to introduce a new issue on appeal (quoting *In re Marriage of Walker*, 138 Cal. App. 4th 1408, 1418 (2006))).

governing nonjudicial foreclosures by failing to include either the "cure amount" or contact information sufficient to allow the debtor to discover the cure amount. Wendt concedes that neither the cure amount nor related contact information is expressly required by statute,[18] but he argues that the debtor's right to that information should be implied. As support he points to our decision in *Hagberg v. Alaska National Bank*, in which we found that the debtor's statutory right "to call a halt to a nonjudicial foreclosure by paying costs and by bringing his payments current carries with it an implied duty on the part of the beneficiary to accept a tender of the sum in default,"[19] and our decision in *Farmer v. Alaska USA Title Agency, Inc.*, in which we held that the lender's statutory duty to advise the debtor, on request, of the amount in default requires that the lender "provide the figure . . . at a reasonable time before foreclosing."[20] We have not yet decided whether the lender should be affirmatively required to provide a cure amount without waiting for the debtor to ask for it.[21] But we need not decide that issue here. Even if we assume a debtor has such a right, the deficiencies alleged in this case do not justify the extraordinary measure of undoing the foreclosure sale.

---

[18] *See* AS 34.20.070(b) (listing information that must be included in notice of default).

[19] 585 P.2d 559, 562 (Alaska 1978).

[20] 336 P.3d 160, 164 (Alaska 2014) (alteration in original) (quoting *Young v. Embley*, 143 P.3d 936, 947 (Alaska 2006)).

[21] In both *Hagberg* and *Young*, the debtor had requested the amount in default but the bank had refused to respond, *Hagberg*, 585 P.2d at 560, or responded only on the morning of the sale, *Young*, 143 P.3d at 947. And in *Farmer*, the required cure figures were appropriately given in response to the debtor's request. 336 P.3d at 165.

We will set aside a foreclosure sale only if "the procedure followed . . . inherently rendered the sale unfair and unreasonable."[22] We have set aside foreclosure sales when parties have been deprived of their substantive foreclosure rights or were denied meaningful notice. In *Young v. Embley* we unwound a sale when reinstatement figures were not provided to a junior lienholder at a reasonable time despite repeated requests for those figures.[23] In *Rosenberg v. Smidt* we found a sale to be voidable because the creditor did not make a diligent effort to give notice to the debtors.[24]

Not every statutory deficiency renders the sale inherently unfair and unreasonable. In *Farmer* we upheld a sale even though the debtor had not been given notice of the sale's postponement.[25] We reasoned that because the debtor had received proper initial notice, he would have learned of the postponement and the new date if he had appeared at the originally scheduled time.[26]

Of the statutory violations that Wendt alleges, the one that is potentially most consequential is the lack of contact information in the notice of default; without that information, debtors cannot exercise their recognized right to request the amount necessary to cure. But in earlier cases in which we have set aside a foreclosure sale because of the inability to cure, the interested party had actually attempted to exercise

---

[22] *Cook Schuhmann & Groseclose, Inc. v. Brown & Root, Inc.*, 116 P.3d 592, 596 (Alaska 2005).

[23] 143 P.3d at 947-48.

[24] 727 P.2d 778, 783, 786 (Alaska 1986).

[25] 336 P.3d at 163-64.

[26] *Id.* at 163.

this right.[27] Wendt never alleged that he was unaware of his right to cure, nor did he allege that he actually attempted — or even wanted — to request the reinstatement amount. He now "bears the consequence of his own inattention."[28] Because Wendt was not prevented from actually asserting a substantive right, the sale was not inherently unfair and unreasonable, and the superior court did not err by declining to set the sale aside.

## V. CONCLUSION

We AFFIRM the judgment of the superior court.

---

[27] *See, e.g., Hagberg v. Alaska Nat'l Bank*, 585 P.2d 559, 562 (Alaska 1978); *Young*, 143 P.3d at 947 (junior mortgagee preserved her rights under the foreclosure statute because she repeatedly requested the cure amount).

[28] *Farmer*, 336 P.3d at 163.