Fitzgerald *v.* The First National Bank of Boston.

THOMAS J. FITZGERALD & another[1] *vs.* THE FIRST NATIONAL BANK OF BOSTON & another.[2]

No. 96-P-1654.

Suffolk. January 29, 1998. - January 6, 1999.

Present: KASS, SMITH, & FLANNERY, JJ.[3]

*Real Property,* Mortgage, Sale. *Mortgage,* Foreclosure, Real estate. *Notice,* Foreclosure of mortgage.

A properly noticed and advertised auction of real estate at foreclosure was properly adjourned, in accordance with accepted Massachusetts practice, by a public proclamation of postponement by the auctioneer to those present at the locus. [100-101]

Mortgagors who did not attend the auction of their real estate at foreclosure, of which they had notice, and who did not appear later on the date to which the mortgagee had postponed the auction at their request, had no basis to claim that the mortgagee's conduct was in contravention of their interests. [101]

A judge of the Land Court correctly concluded, on the basis of the record of proceedings to challenge the adequacy of the selling price of certain real property at a foreclosure sale, that the amount of the winning bid did not demonstrate any bad faith or lack of diligence on the part of the mortgagee bank. [101-102]

CIVIL ACTION commenced in the Land Court Department on November 7, 1994.

The case was heard by *Peter W. Kilborn,* J.

*Matthew J. Conroy* for Thomas J. Fitzgerald.

*Kevin J. Simard* for The First National Bank of Boston.

*Jeffrey D. Williams,* for Ahmed Mujeebuddin, was present but did not argue.

FLANNERY, J. The plaintiffs, interested parties in a nominee

[1]Frederick J. Conroy, trustee of Security Fund Trust.

[2]Ahmed Mujeebuddin.

[3]Justice Flannery participated in the deliberation on this case and authored the opinion prior to his death.

trust owning certain mortgaged property in Hopkinton, challenge the adequacy of notice and selling price in connection with the foreclosure sale conducted by the defendant, The First National Bank of Boston (bank). A Land Court judge, following a two-day trial, entered judgment for the defendants. We affirm.

The subsidiary facts are not in dispute. As of 1993, Mark and Rose Marinelli owned a roughly thirty-five-acre parcel of undeveloped land (locus), which the Marinellis had mortgaged to the bank to secure a promissory note. On May 28, 1993, Frederick Conroy, trustee of the Security Fund Trust (trust), acquired the locus from the Marinellis and assumed all obligations under the mortgage and promissory note, pursuant to a mortgage amendment and an assumption agreement with the Marinellis and the bank. The Marinellis remained obligated to the bank under the note, and Thomas Fitzgerald, the trust beneficiary, guaranteed Conroy's obligations to the bank.

The agreement with the bank required Conroy to take certain steps during the remainder of 1993 in order to avoid foreclosure. These included removing a number of encumbrances from the locus, obtaining town approvals for development, and securing a refinancing commitment. The entire outstanding balance on the note was due on or before December 17, 1993. None of the conditions were met, and on September 29, 1994, the bank sent foreclosure notices to the Marinellis, Conroy, and Fitzgerald. The bank also published notice of the sale, which was scheduled for October 18, 1994. The day before the scheduled sale, Conroy, Fitzgerald, and the bank reached an agreement to postpone the sale until October 21, 1994, or, alternatively, until November 17, 1994. That agreement, as evidenced by an October 17, 1994, letter (letter agreement), required Conroy and Fitzgerald to deliver $20,000 to the bank on the morning of October 18 to achieve a postponement until October 21, and to provide the bank with a mortgage deed on two properties in Braintree before October 21, to achieve a postponement until November 17. The money was paid, and the October 18 auction was postponed by the auctioneer's public proclamation to those present at the locus. The mortgage on the Braintree properties, however, did not materialize.[4]

When the bank failed to receive the mortgage on the Brain-

---

[4]Conroy claimed at trial that he expected to receive the mortgage paperwork from the bank; witnesses for the bank claimed that they expected Conroy to prepare the mortgage and send it to them. The letter agreement itself provided:

tree properties, it went forward with the foreclosure sale on October 21. The auction, scheduled for 11 A.M., was further postponed by public proclamation until 2:30 P.M. At that time, the locus was sold to Ahmed Mujeebuddin for $100,000, the higher of two bids.

1. *Postponement by public proclamation.* While conceding that the notices and publication of the October 18, 1994, auction complied with the statutory requirements, the plaintiffs insist that the postponements were ineffectual because they were announced by the auctioneer at the auction site rather than by additional written notice and publication. It has long been accepted practice in Massachusetts that, while details of the initial auction must be provided by written notice to the appropriate parties and published in a newspaper in accordance with G. L. c. 244, §§ 11-17B, a postponement of the sale may be announced by public proclamation to those present at the auction site, particularly when the adjournment is requested by the mortgagor. *Way* v. *Dyer*, 176 Mass. 448, 450 (1900). See *Stevenson* v. *Dana*, 166 Mass. 163, 170 (1896); *Freed* v. *Rosenthal*, 231 Mass. 357, 361 (1918); *Chartrand* v. *Newton Trust Co.*, 296 Mass. 317, 319-320 (1936). Contrast *Clark* v. *Simmons*, 150 Mass. 357, 360-361 (1890) (foreclosure sale invalidated because junior mortgagee, who specifically requested notification, received insufficient notice of the auction, which was adjourned several times over a three-month period and was attended only by the auctioneer and the mortgagee's agent). This is in keeping with the overriding principle that, beyond the statutorily-prescribed procedures, the mortgagee's duties "are embraced under the general obligation to make reasonable efforts to prevent a sacrifice of the property." *Marcus* v. *Collamore*, 168 Mass. 56, 57 (1897). *Way* v. *Dyer*, 176 Mass. at 450.

The plaintiffs rely instead on *In re Ruebeck*, 55 B.R. 163, 169-171 (Bankr. D. Mass. 1985), in which the Bankruptcy Court judge, while acknowledging that there was no State law requirement for noticing continuances, ruled that new advertisements and written notices of each continuance were necessary to conform to the Bankruptcy Code, 11 U.S.C. § 548(a)(2)(A) and (B)(i) (1982). In this regard, however, *Ruebeck*'s relevance has been undermined by *Resolution Trust Corp.* v. *Carr*, 13

"Upon receipt and recordation of the mortgage, the Bank will postpone the public auction foreclosure sale to Thursday, November 17, 1994 at 11:00 A.M."

F.3d 425, 431 (1st Cir. 1993), which declined to apply the *"Ruebeck* rule"[5] in a nonbankruptcy case and questioned the rule's vitality in light of the Legislature's failure to adopt that rule in 1989 amendments to the State fraudulent conveyance statute. See G. L. c. 109A, § 3, as amended by St. 1989, c. 157. See now G. L. c. 109A, § 4.

We decline to adopt the notice requirements of *Ruebeck* for the adjournment of a foreclosure sale conducted under State statutory and decisional law. It was appropriate in this case for the bank to continue the sale by public proclamation at the time and place of the scheduled auction, where that auction was properly noticed and advertised in the first instance under G. L. c. 244, §§ 11-17B, and where the postponement was made to accommodate the mortgagors. Apart from the statutory requisites, to which the mortgagee must strictly adhere, questions regarding notice of foreclosure proceedings will continue to be viewed according to the criteria set forth in our cases, rather than under any hard and fast rule, in light of the mortgagee's general obligations of good faith, diligence, and fairness in the disposition of the mortgaged property. See generally *Clark* v. *Simmons*, 150 Mass. at 360-361; *Pemstein* v. *Stimpson*, 36 Mass. App. Ct. 283, 286-288 (1994).

Here, the plaintiffs failed to attend the October 21, 1994, auction at their peril, having been notified of the originally scheduled auction and of the terms of the bank's forbearance, as set forth in the letter agreement. They could have protected their interests by attending the October 18 auction and communicating with the auctioneer, as did other interested parties at the auction on that date.[6] We agree with the Land Court judge that it was the plaintiffs' conduct, whether merely careless or wilful, that caused them to miss the October 21, 1994, auction, and not any wrongful action or omission on the bank's part. See *DesLauries* v. *Shea*, 300 Mass. 30, 36 (1938).

2. *Adequacy of the selling price.* The judge determined that the defendant Mujeebuddin's bid of $100,000, together with his assumption of $14,400 in municipal liens, was not indicative of

---

[5]As noted by the Land Court judge, the phrase *"Ruebeck* rule," the Bankruptcy Court judge's requirement that continuances be advertised, was coined in Eno & Hovey, Real Estate Law § 10.14 (1995).

[6]The judge noted in his decision that Fitzgerald and Mark Marinelli attended the October 18 auction but did not make themselves known to the auctioneer or provide their names and telephone numbers.

the bank's bad faith or lack of diligence, in light of the locus's appraised value of $110,000 at the time of the 1994 auction.[7] The record fully supports the judge's finding in this regard. See *Chartrand* v. *Newton Trust Co.*, 296 Mass. at 320-321. See generally *Pemstein* v. *Stimpson*, 36 Mass. App. Ct. at 286-287.

Based on the foregoing, the Land Court judgment for the defendants is affirmed.

*Judgment affirmed.*

---

[7]The appraiser who set the fair market value of the locus in excess of $400,000 in his 1986 and 1990 appraisals testified at trial that those figures were not relevant in determining the locus's value in 1994.