*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ROBERT J. FARMER, | ) | |
| | ) | Supreme Court No. S-15163 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-13-04416 CI |
| v. | ) | |
| | ) | O P I N I O N |
| ALASKA USA TITLE | ) | |
| AGENCY, INC. and PEGGY JO | ) | No. 6963 – October 24, 2014 |
| WATSON, | ) | |
| | ) | |
| Appellees. | ) | |
| _____ | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Erin B. Marston, Judge.

Appearances: Kenneth P. Jacobus, P.C., Anchorage, for Appellant. David D. Clark, Law Office of David Clark, Anchorage, for Appellee Peggy Jo Watson. No appearance for Appellee Alaska USA Title Agency, Inc.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

STOWERS, Justice.

## I. INTRODUCTION

A debtor was given proper initial notice of a pending nonjudicial foreclosure sale but was not given additional notice when the sale was postponed. The debtor argued that equity required re-notice after each postponement and that the lack of re-notice violated his due process rights. The superior court granted summary

judgment to the creditor. We affirm because equity does not require re-notice after postponement of a nonjudicial foreclosure sale and notice of a postponement by public announcement satisfies due process.

## II.   FACTS AND PROCEEDINGS

In 1992 Robert J. Farmer and his wife, Kathy J. Farmer, bought Wolverine Lodge in Glennallen from Peggy Jo Watson.[1] The purchase price of $365,000 was secured by a deed of trust on the property. Farmer defaulted on the mortgage for the first time in 1996, but he cured before the foreclosure sale occurred.

In 2012 Farmer defaulted again. Farmer was almost five months late on the payments, had not paid the real estate taxes or room taxes, and had no insurance on the property. Watson paid all of these expenses herself in order to keep the property up-to-date and insured. She testified that "Farmer promised many times that he would bring the loan current and obtain insurance," but "[h]e never did."

In March 2012 Watson commenced nonjudicial foreclosure proceedings. Watson's attorney recorded a notice of default and a notice of sale, and distributed them to Farmer by mail and personal service. Notice of the nonjudicial foreclosure sale was published in the Alaska Journal of Commerce and posted at various locations in Anchorage.

The nonjudicial foreclosure sale was postponed six times. It was initially set for July 25, but Watson postponed it until August 29. On August 28 Farmer filed for Chapter 13 bankruptcy, and Watson again postponed the sale, this time at Farmer's

---

[1]    The deed of trust reflects that the property was purchased from Peggy Jo Dicks and Jesse Allen Dicks. Peggy Jo presumably later changed her name to Peggy Jo Watson.

request, until September 26. Because of the ensuing automatic bankruptcy stay,[2] the sale was postponed until October 31, then until November 28, then again until December 19, and finally until December 27, when the sale actually took place.[3] Watson's attorney was the only attendee at each of the scheduled sales. Each of these postponements was announced publicly on the sale date, and the trustee signed the notice of postponement every time. Farmer was not otherwise notified of any of the postponements, and, at the time of the actual sale, he alleges that neither "[he], [his] wife, nor [his] bankruptcy attorney knew . . . that a deed of trust foreclosure sale was scheduled for December 27, 2012."

Over the course of the postponements, Farmer asked for the cure amount three separate times, the last time being on December 11, 2012. Watson's attorney provided the cure amount after each request. Farmer testified that he "was in the process of obtaining funds in order to bring the deed of trust current, and would have been able to do so." But the record contains no documentation of any attempt to cure, and Farmer presented no evidence of his attempts to "obtain[] funds." At the time of the bankruptcy proceedings, Farmer had $200 in cash and $113 in his bank account. Watson swore in an affidavit that Farmer "never promised . . . to cure the foreclosure" after she received relief from the bankruptcy stay.

At the nonjudicial foreclosure sale on December 27, 2012, Watson bought the property with a bid of $120,000. The only valuation of the property was Farmer's own valuation on his bankruptcy worksheet, which was $150,000. Watson believed that $150,000 was "in the ball-park given the amount of deferred maintenance on the property."

---

[2]     See 11 U.S.C. § 362(a) (2012).

[3]     The automatic stay was lifted on December 7, 2012.

Farmer filed suit in January 2013, challenging the nonjudicial foreclosure. He argued mainly that he had not received notice of the sale, that he could have cured, and that the foreclosure was a forfeiture. Watson moved for summary judgment on the validity of the foreclosure. She argued that the trustee was not required to send notice to Farmer every time the sale was postponed, and that Farmer offered no evidence showing that he was in a position to cure. The superior court granted summary judgment to Watson. The court concluded that the foreclosure was conducted "according to the appropriate statutes," was properly postponed, and that "Watson did not mislead [Farmer] by providing a cure amount." Farmer appeals.

## III. STANDARD OF REVIEW

We review the "grant of a summary judgment motion de novo, affirming if the record presents no genuine issue of material fact and if the movant is entitled to judgment as a matter of law."[4] In this examination, we draw all reasonable inferences in favor of the nonmovant.[5] In order to survive a motion for summary judgment, a party must present more than "unsupported assumptions and speculation."[6] We "apply our independent judgment to questions of law, adopting the rule of law most persuasive in light of precedent, reason, and policy."[7]

---

[4]     *Erkins v. Alaska Tr., LLC*, 265 P.3d 292, 296 (Alaska 2011) (quoting *Beegan v. State, Dep't of Transp. & Pub. Facilities*, 195 P.3d 134, 138 (Alaska 2008)) (internal quotation marks omitted).

[5]     *Id*.

[6]     *Boyko v. Anchorage Sch. Dist.*, 268 P.3d 1097, 1103 (Alaska 2012) (quoting *Perkins v. Doyon Universal Servs., LLC*, 151 P.3d 413, 416 (Alaska 2006)) (internal quotation marks omitted).

[7]     *Shaffer v. Bellow*s, 260 P.3d 1064, 1068 (Alaska 2011) (quoting *Smith v. Radecki*, 238 P.3d 111, 114 (Alaska 2010)) (internal quotation marks and alterations (continued...)

## IV. DISCUSSION

Farmer makes three arguments on appeal: (1) that failing to notify him after each postponement was inequitable and violated his due process rights under the Alaska Constitution; (2) that he was misled into thinking that he would have a "reasonable time" to cure; and (3) that the sale price was a forfeiture.

### A. The Superior Court Did Not Err By Concluding That Farmer Had Sufficient Notice Of The Sale.

Farmer's central contention is that he should have received notice of the date and time of the foreclosure sale after each postponement. He argues that re-notice is required by equity, and the lack of such notice violated his due process rights. The superior court determined that "[t]he foreclosure sale . . . was done correctly" and "[t]he sale was properly postponed." We agree: equity does not require re-notice after postponement of a nonjudicial foreclosure sale, and Farmer received constitutionally sufficient notice.

Nonjudicial foreclosure sales are governed by AS 34.20.080. The statute requires re-notice to the debtor only when "the foreclosure [is] postponed for more than 12 months."[8] Re-notice is not required here because the foreclosure sale occurred within 12 months of the original foreclosure sale date. Parties may also contract for additional

---

[7](...continued)
omitted).

[8]    AS 34.20.080(e); *see Ostrow v. Higgins*, 722 P.2d 936, 941-42 (Alaska 1986) (holding that the statute did not require re-notice because "the legislature presumed that the trustee followed postponement notice requirements enunciated in the deed of trust itself").

notice,[9] but Farmer did not.  Thus, any re-notice requirement must be based in equity or flow from constitutional rights.

### 1. Equity does not require re-notice after a nonjudicial foreclosure is postponed.

Farmer argues that we should impose an "actual notice" requirement "based on equity, similar to *Rosenberg* [*v. Smidt*[10]] and *Young* [*v. Embley*[11]]."  He further argues that "[i]f a trustee has to exercise due diligence to locate an actual address for the purpose of actual notice, equity also requires that the trustee must provide actual notice when the address is known."

Neither *Rosenberg* nor *Young* supports the proposition that the court should imply a notice requirement in equity.  *Young* did not speak to the issue of equity at all,[12] and the situation in *Rosenberg* is distinguishable.  In *Rosenberg*, we examined whether the trustee was required to exercise due diligence to learn the debtor's new address when notice of the pending foreclosure was returned "unclaimed."[13]  We noted a tension "between [the] free and easy alienability of real property and notice to persons whose interest in real property is to be affected by . . . private action."[14]  We implied a heightened notice requirement to "balance adequately the competing interests involved"

---

[9]      *See Ostrow*, 722 P.2d at 941.

[10]     727 P.2d 778 (Alaska 1986).

[11]     143 P.3d 936 (Alaska 2006).

[12]     In *Young* we held that the trustee, if requested, had a duty to provide the cure amount "at a reasonable time before foreclosing." *Id.* at 947.  But our holding was an exercise in statutory interpretation, not based in equity. *Id.*

[13]     *Rosenberg*, 727 P.2d at 779-80.

[14]     *Id.* at 783.

at that stage in the nonjudicial foreclosure process.[15]  But *Rosenberg* dealt with a much more important stage of notice — initial notice of the pending nonjudicial foreclosure.[16] Here Farmer had actual initial notice that his property would be sold via nonjudicial foreclosure; he simply did not receive actual re-notice after each public postponement. But Farmer had the critical piece of information — that foreclosure was pending.  Had Farmer appeared at each scheduled sale, he would have learned of the postponements and rescheduled dates of the sale.  Thus, his interest in re-notice is much weaker than the interest in receiving notice of the initial foreclosure at stake in *Rosenberg*.

Since *Rosenberg*, we have declined to imply a heightened notice requirement when it "would impose a significant burden on a routine transaction."[17] Postponement of a nonjudicial foreclosure sale is one such routine transaction. Foreclosures may be postponed multiple times; implying a re-notice requirement after each postponement would severely complicate the nonjudicial foreclosure process.  And as we have explained, the debtor's interest in notice here is much weaker than was the debtor's interest in *Rosenberg*:  in *Rosenberg*, the interest was in receiving initial notice of the pending nonjudicial foreclosure; in this case, the debtor's interest is in the right to be inattentive.[18]

---

[15]     *Id.*

[16]     *Id.* at 780.

[17]     *Blood v. Kenneth A. Murray Ins., Inc.*, 151 P.3d 428, 434 (Alaska 2006).

[18]     Under the current statutory requirements, debtors must either keep in contact with the trustee or attend the foreclosure sales to learn of the postponement dates. *See* AS 34.20.080(e).  If re-notice were required, debtors would not have to make any independent inquiries or attend the foreclosure sales.

Farmer could have contracted for more notice,[19] but he did not; he could have attended the foreclosure sales, but he did not; and he could have contacted Watson's attorney to inquire about the sale date, but he did not.  Thus, Farmer bears the consequence of his own inattention.[20]  The superior court did not err when it concluded that re-notice is not required by equity.

## 2.  Re-notice is not required under the Alaska Constitution.

Farmer also argues that failing to give notice after every postponement violated his procedural due process rights because "[o]ne of the fundamental requirements of procedural due process is the right to have adequate notice of what is being done to you or your property."  He argues that there was state action because "[t]he entire statutory scheme under which nonjudicial foreclosures take[] place was created by state action."  But we have already decided this issue.  In *Ostrow v. Higgins* the appellant argued that her due process rights were violated when the trustee did not give notice after the nonjudicial foreclosure of her property was postponed.[21]  We held:

> Even assuming arguendo the presence of state action in
> Alaska's deed of trust statute, we conclude that Ostrow

---

[19]     *See Ostrow v. Higgins*, 722 P.2d 936, 942 (Alaska 1986).  Farmer's deed of trust allows the trustee to postpone the sale without providing further notice.

[20]     *In re Nghiem*, 264 B.R. 557, 562 (B.A.P. 9th Cir. 2001) ("Other courts have . . . point[ed] out that debtors who receive notice of foreclosure sales before bankruptcy know that the property is threatened with foreclosure and have an obligation to stay informed of the status of the foreclosure process."); *In re Jauregui*, 197 B.R. 673, 675 (Bankr. E.D. Cal. 1996) ("A debtor who ignores or chooses to forget the status of a pending foreclosure should rightly bear the consequences of doing so."); *Fitzgerald v. First Nat'l Bank of Boston*, 703 N.E.2d 1192, 1195 (Mass. App. 1999) ("[T]he plaintiffs failed to attend the . . . auction at their peril . . . .  They could have protected their interests by attending the . . . auction and communicating with the auctioneer . . . .").

[21]     *Ostrow*, 722 P.2d at 940-42.

suffered no deprivation because both she and potential third party bidders received sufficient notice. A construction of AS 34.20.080(e) as allowing sale by public declaration gives notice reasonably calculated to reach interested parties.[22]

Farmer fails to present any persuasive reason to depart from our precedent.[23] Therefore, we continue to hold that postponement by a public announcement "gives notice reasonably calculated to reach interested parties."[24]

## B. The Superior Court Did Not Err By Concluding That Farmer Was Not Misled By The Cure Amount Or The Time To Cure.

Farmer next argues that "he was not aware of the amount required to cure, and believed and relied on acts of Ms. Watson . . . that there would be a reasonable time allowed to bring the default current."[25] But he supplied no evidence of communications

---

[22] *Id.* at 942 (italicization removed).

[23] *See McCrary v. Ivanof Bay Vill.*, 265 P.3d 337, 341 (Alaska 2011) ("We will overrule a prior decision only when clearly convinced that the rule was originally erroneous or is no longer sound because of changed conditions, and that more good than harm would result from a departure from precedent." (quoting *Guerrero ex rel. Guerrero v. Alaska Hous. Fin. Corp.*, 123 P.3d 966, 982 n.104 (Alaska 2005)) (internal quotation marks omitted)).

[24] *Ostrow*, 722 P.2d at 942 (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950); *Wickersham v. State, Commercial Fisheries Entry Comm'n*, 680 P.2d 1135, 1144 (Alaska 1984)).

[25] Farmer argues that he was denied the right to cure and that the cure amount kept changing. Neither argument has merit. Farmer was provided with the cure amount on three separate occasions but still failed to cure. He presented no evidence, aside from his affidavit, that he had any money with which to cure. And the cure amount kept increasing to reflect the fees and unpaid costs that accumulated over the months. *See* AS 34.20.070(b) (allowing cure "by payment of the sum then in default, other than the principal that would not then be due if no default had occurred, and attorney and other foreclosure fees and costs actually incurred by the beneficiary and trustee due to the

(continued...)

with Watson to support his allegation that Watson misled him.  The superior court found that "Ms. Watson did not mislead the plaintiff by providing a cure amount."

We have held that under AS 34.20.070(b) the lender has a duty to "seasonably advise the obligor on request of the amount in default."[26]  This requires the lender to "provide the figure . . . at a reasonable time before foreclosing" if the debtor has requested it.[27]  In *Young v. Embley* we found the cure procedure defective when the debtor had repeatedly asked for the cure amount, but the lender only provided it on the morning of the foreclosure.[28]  Likewise, in *Hagberg v. Alaska National Bank* we concluded that a preliminary injunction should have been granted to stop a nonjudicial foreclosure where the cure amount was only provided three days before the foreclosure sale.[29]

Watson's attorney provided cure figures to Farmer in July and September. The cure amount was provided a third time on December 11, 2012.  The foreclosure sale occurred two weeks later, on December 27, 2012.  Watson timely provided the cure amount every time Farmer asked.  Farmer knew of the cure amount throughout the pendency of the sale, yet failed to cure.  He also failed to inquire in his cure-amount requests when the sale was scheduled.  So long as the debtor is promptly provided the cure amount on request, the trustee need not wait a set time after the cure amount is

---

[25](...continued) default"); *Albrecht v. Alaska Tr., LLC*, 286 P.3d 1059, 1063 (Alaska 2012) (holding that inclusion of foreclosure costs and fees was proper under AS 34.20.070(b)).

[26]     *Hagberg v. Alaska Nat'l Bank*, 585 P.2d 559, 562 (Alaska 1978).

[27]     *Young v. Embley*, 143 P.3d 936, 947 (Alaska 2006).

[28]     *Id.*

[29]     *Hagberg*, 585 P.2d at 561-62.

provided to foreclose. The superior court did not err by concluding that Watson did not mislead Farmer regarding the time to cure.

### C.    The Nonjudicial Foreclosure Sale Was Not A Forfeiture.

Finally, Farmer argues that the $120,000 sale price was inadequate because he had paid over $500,000 to Watson and had made substantial improvements to the property.[30] Watson responds that the sale price was not a forfeiture because it was 80% of Farmer's valuation.

Under a deed of trust, the trustee has the power to "foreclose and sell the property according to the terms provided in the deed" if the debtor defaults on the loan.[31] The nonjudicial foreclosure sale may be voided for certain types of defects in the process,[32] but mere inadequacy of price is generally not sufficient by itself.[33] "However, if the inadequacy of the sale price is (1) 'so gross as to shock the conscience and raise

---

[30]    Farmer also alleges that Watson sold two of his liquor licenses at the foreclosure sale and that the proceeds of these licenses should have been used to bring his payments up to date. But the liquor licenses were not part of the nonjudicial foreclosure and are not relevant to this proceeding. If the liquor licenses are eventually sold in a private UCC sale, the surplus above the debt that they are securing will be paid to Farmer's company, Farmer Valley Liquors, Inc. *See* AS 45.29.615; U.C.C. § 9-615(d)(1) (2012); 4 JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE § 34-4 (6th ed. 2010).

[31]    *Baskurt v. Beal*, 101 P.3d 1041, 1044 (Alaska 2004) (citing AS 34.20.070(a)).

[32]    *See Rosenberg v. Smidt*, 727 P.2d 778, 784 (Alaska 1986) (holding that sale is voidable when defect goes "not to the trustee's right to proceed with foreclosure but only to the mechanics of exercising the power") (internal quotation marks omitted).

[33]    *Baskurt*, 101 P.3d at 1044 (citing *McHugh v. Church*, 583 P.2d 210, 213 (Alaska 1978)). Homes generally do not sell at a foreclosure sale for the full amount they would fetch through a normal transaction. *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537-38 (1994).

a presumption of fraud or unfairness,' or (2) is coupled with other irregularities in the sale procedures, then invalidation of the sale may be justified."[34] "Gross inadequacy is measured by reference to the fair market value of the property at the time of the sale."[35]

We considered what would constitute an inadequate price for a trustee foreclosure sale of a property in *Baskurt v. Beal*.[36] We explained that, although jurisdictions disagree on the threshold for unacceptability, "[f]oreclosure sale prices of fifty percent or more of fair market value are routinely upheld."[37] Here the property sold for 80% of its undisputed value; this is not a forfeiture. And whatever improvements Farmer made would be reflected in the valuation of the property, a valuation Farmer himself provided. Finally, the amount Farmer has paid on the property is not relevant to whether the property sold for a reasonable amount.

The superior court did not err in concluding that the sale of the property was properly conducted.

## V. CONCLUSION

We AFFIRM the decision of the superior court in all respects.

---

[34] *Baskurt*, 101 P.3d at 1044 (quoting *McHugh*, 583 P.2d at 213-14).

[35] *Id*.

[36] *Id*. at 1046 (invalidating a sale for 15% of the value of the property).

[37] *Id*. at 1044 (collecting cases from other jurisdictions).