*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| MARK THOMAS, | ) |
| | ) Supreme Court No. S-17550 |
| Appellant, | ) |
| | ) Superior Court No. 3AN-16-10316 CI |
| v. | ) |
| | ) O P I N I O N |
| JOSEPH P. CASTEEL TRUST, | ) |
| | ) No. 7557 – October 8, 2021 |
| Appellee. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Andrew Guidi, Judge.

Appearances: Robert A. Sparks, Law Office of Robert A. Sparks, Fairbanks, for Appellant. Brian Riekkola, North Star Law Group, LLC, Anchorage, for Appellee.

Before: Bolger, Chief Justice, Winfree, Maassen, Carney, and Borghesan, Justices.

WINFREE, Justice.

## I.  INTRODUCTION

A junior lienholder who took no steps to protect his interest at a nonjudicial foreclosure sale appeals the superior court's subsequent summary judgment decision

dismissing his claim that the sale process was defective and that the sale thus should be set aside.[1]  Seeing no error, we affirm the superior court's decision.

## II.    LEGAL BACKGROUND

### A.    Nonjudicial Deed Of Trust Foreclosure

#### 1.    Overview

Parties execute and record a deed of trust to secure payment of a financial obligation by creating a lien against real property.[2]  An impartial third party named to administer the transaction is the trustee, the debtor is the trustor, and the creditor is the trust beneficiary.[3]  In the event of default under an obligation secured by a deed of trust, Alaska law authorizes the trustee to commence nonjudicial foreclosure proceedings and sell the real property to satisfy the trustor's obligation.[4]  Prior to sale the trustee must record a notice of the trustor's default and the beneficiary's election to sell the property[5]

---

[1]      Other parties were involved in the superior court proceedings, but only Thomas appealed; the caption intentionally omits parties not participating in the appeal.

[2]      *See* AS 34.20.110 (providing that "a deed of trust, given to secure an indebtedness, shall be treated as a mortgage of real estate").

[3]      *See Young v. Embley*, 143 P.3d 936, 940-42 (Alaska 2006) (explaining deed of trust creates lien against real property, title remains with trustor, and deed of trust has "equity of redemption"); *McHugh v. Church*, 583 P.2d 210, 218 (Alaska 1978) ("[T]he trustee . . . owes a duty both to the trustor and the beneficiary of the trust to perform impartially . . . .").

[4]      *See* AS 34.20.070 (specifying nonjudicial deed of trust foreclosure procedures); *see also Farmer v. Alaska USA Title Agency, Inc.*, 336 P.3d 160, 165 (Alaska 2014) ("Under a deed of trust, the trustee has the power to 'foreclose and sell the property according to the terms provided in the deed' if the debtor defaults on the loan." (quoting *Baskurt v. Beal*, 101 P.3d 1041, 1044 (Alaska 2004))).

[5]      *See* AS 34.20.070(b) (requiring that trustee record notice of default and (continued...)

and provide notice to all subsequent parties having an interest in, or lien upon, the property.[6] The trustor has the right to cure the default and prevent the foreclosure sale.[7] A junior lienholder has the same right to cure and may satisfy the trustor's default to avoid the foreclosure sale.[8] The property is sold subject to encumbrances senior to the deed of trust, but junior encumbrances are extinguished by the sale.[9]

---

[5] (...continued) provide notice of foreclosure sale "[n]ot less than 30 days after the default and not less than 90 days before the sale").

[6] Alaska Statute 34.20.070(c) requires that the trustee provide notice to:

> (1) the trustor in the trust deed; (2) the successor in interest to the trustor whose interest appears of record or of whose interest the trustee or the beneficiary has actual notice, or who is in actual physical possession of the property; (3) any other person actually in physical possession of or occupying the property; (4) any person having a lien or interest subsequent to the interest of the trustee in the trust deed, where the lien or interest appears of record or where the trustee or the beneficiary has actual notice of the lien or interest . . . .

[7] *See* AS 34.20.070(b) (setting out trustor's right to cure default before foreclosure of interest).

[8] *See Young*, 143 P.3d at 938, 942 (holding that to protect interests "junior lienholders have the right to cure a senior interest holder's default on a deed of trust" because "a foreclosure cuts off all interests junior to the one foreclosed").

[9] *See* AS 34.20.090(a) ("[Foreclosure] sale and conveyance transfers all title and interest that the party executing the deed of trust had in the property sold at the time of its execution . . . ."); *Adams v. FedAlaska Fed. Credit Union*, 757 P.2d 1040, 1042 (Alaska 1988) ("Upon selling the property the interests created subsequent to the deed, including those of junior lienholders, are cut off."); *see also Burnett, Waldock & Padgett Invs. v. C.B.S. Realty*, 668 P.2d 819, 823 (Alaska 1983) ("[L]and purchased at a deed of
(continued...)

### 2. Procedural defects

#### a. Void versus voidable sale

"[A] foreclosure suit, whether it is styled as an action to recover property or as an action for abuse of process, seeks a relief that sounds properly only in equity . . . ."[10]  When defects in a foreclosure are alleged, we ask whether the process was so inherently "unfair and unreasonable" that setting aside the sale is necessary to achieve an equitable result.[11]  "We have set aside foreclosure sales when parties have been deprived of their substantive foreclosure rights or were denied meaningful notice."[12]  A sale is set aside only in "the most unusual circumstances."[13]  Some defects are "so inconsequential that they render the sale neither void nor voidable.  These defects commonly involve minor discrepancies in the notice of sale."[14]

Only a substantial defect will make a foreclosure sale void, such as lacking a substantive basis to foreclose because, for example, the trustor was not in fact in default

---

[9]      (...continued)
trust sale is subject to prior encumbrances, but not to those made after the deed of trust is executed.").

[10]      *Young*, 143 P.3d at 948 (upholding court's denial of jury trial).

[11]      *Wendt v. Bank of N.Y. Mellon Trust Co., N.A.*, 487 P.3d 235, 241 (Alaska 2021) (quoting *Cook Schuhmann & Groseclose, Inc. v. Brown & Root, Inc.*, 116 P.3d 592, 596 (Alaska 2005)); *see also Alaska Tr., LLC v. Ambridge*, 372 P.3d 207, 229 (Alaska 2016) (Winfree, J., dissenting) ("[P]rocedural or substantive inequities surrounding the foreclosure process may invalidate the sale . . . .").

[12]      *Wendt*, 487 P.3d. at 241.

[13]      *Young*, 143 P.3d at 948 (quoting *Cook Schuhmann*, 116 P.3d at 595-96).

[14]      GRANT S. NELSON ET AL., REAL ESTATE FINANCE LAW § 7.21, at 644 (6th ed. 2015).

at the outset.[15] Defects involving "the mechanics of exercising the power" to foreclose are not substantial and do not render a sale void.[16] A trustor retains property title after a void foreclosure sale.[17]

"[D]efects in the mechanics of the trustee's exercise of the power to foreclose may render the foreclosure sale voidable,"[18] and the trustor or a junior lienholder "may appeal to have [the] sale set aside" in court.[19] If a foreclosure sale is merely voidable, sale to a bona fide purchaser prevents an interested party from setting aside the sale.[20]

### b.    Grossly inadequate sale price

Although procedural defects may make a nonjudicial foreclosure sale voidable, "mere inadequacy of price is generally not sufficient by itself."[21] But when the sale price is so grossly inadequate that it shocks the conscience or is combined with

---

[15]    *See Rosenberg*, 727 P.2d 778, 783-84 (Alaska 1986) (holding trustee's failure to exercise due diligence in obtaining property owner's current mailing address did not void sale); *see also* NELSON ET AL., *supra* note 14, § 7.21, at 642-43.

[16]    *Rosenberg*, 727 P.2d at 783-84.

[17]    *Id.*; *see also* NELSON ET AL., *supra* note 14, § 7.21, at 642 (explaining that void sale transfers "neither legal nor equitable title . . . to the sale purchaser or subsequent grantees").

[18]    *Baskurt v. Beal*, 101 P.3d 1041, 1044 (Alaska 2004); *see also Burnett, Waldock & Padgett Invs. v. C.B.S. Realty*, 668 P.2d 819, 823 (Alaska 1983) ("Generally, irregularities in a deed of trust sale render it voidable, not void.").

[19]    *Burnett*, 668 P.2d at 824 n.1 (Rabinowitz, J., concurring); *see also* AS 34.20.070(l) (specifying that trustors and lienholders are among parties who "may bring an action in court to enjoin a foreclosure").

[20]    *Rosenberg*, 727 P.2d at 784.

[21]    *Farmer v. Alaska USA Title Agency, Inc.*, 336 P.3d 160, 165 (Alaska 2014).

significant procedural irregularities, invalidating the sale may be justified.[22] "Gross inadequacy is measured by reference to the fair market value of the property at the time of the sale."[23] We use a sliding-scale approach adopted by the Restatement (Third) of Property: Mortgages to determine the effect of the combination of price and irregular procedures on the sale's fairness.[24] The more egregious the price deficiency is, the less significant a procedural defect must be to warrant setting aside the sale.[25] But we also recognize a forced-sale price may be lower than fair market value.[26]

## III. FACTS AND PROCEEDINGS

### A. Facts

The material facts relevant to this case are undisputed. In 2011 George Elkins purchased residential real property from Josef Frelin. Frelin financed the purchase, and Elkins executed a promissory note to Frelin. The note was secured by a recorded deed of trust naming Frelin as beneficiary and Elkins as trustor; Fidelity Title Agency of Alaska, LLC was the successor trustee. In 2016 Elkins defaulted on the

---

[22] *Id.*

[23] *Id.* (quoting *Baskurt*, 101 P.3d at 1044). We have not considered whether fair market value of the "property" includes anything other than the interest subject to foreclosure.

[24] *Baskurt*, 101 P.3d at 1045 (noting Restatement explains that court may invalidate sale, even when value cannot be characterized as "grossly inadequate," if there is "even a slight irregularity in the foreclosure process coupled with a sale price that is substantially below fair market value" (quoting RESTATEMENT (THIRD) OF PROPERTY: MORTGAGES § 8.3 cmt. b, at 587 (AM. LAW INST. 1997))).

[25] *Id.*

[26] *Farmer*, 336 P.3d at 165 n.33; *see also BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537-38 (1994) (holding that price received at foreclosure sale reasonably may be less than price received in fair market sale).

obligation and Frelin authorized Fidelity to commence a nonjudicial deed of trust foreclosure.[27]

At sale the property, valued between $358,600 to $370,000, was subject to the following additional encumbrances: (1) delinquent property taxes of $5,910.75; (2) a condominium association judgment lien for $11,856.52; (3) a judgment lien for $94,994.53 held by Mark Thomas; and (4) a child support lien for $4,127.43 held by Alaska's Child Support Services Division (CSSD) for Elkins's ex-wife, Mary Elkins.[28] The delinquent property taxes and the condominium association lien had priority over Frelin's deed of trust. Thomas's and CSSD's liens were subordinate to Frelin's deed of trust, with the CSSD lien in the most junior position.

Fidelity gave the statutorily required notice of the default and pending foreclosure sale to all interested parties.[29] Although Fidelity did not give CSSD a

---

[27] *See Kuretich v. Alaska Tr., LLC*, 287 P.3d 87, 91 (Alaska 2012) (explaining differences between nonjudicial and judicial foreclosure proceedings).

[28] We hereafter refer to Mary by her first name to avoid confusion; we intend no disrespect.

[29] Alaska Statute 34.20.070(b) provides in relevant part:

[T]rustee shall record . . . a notice of default setting out (1) the name of the trustor, (2) the book and page where the trust deed is recorded or the serial number assigned to the trust deed by the recorder, (3) a description of the trust property, including the property's street address if there is a street address for the property, (4) a statement that a breach of the obligation for which the deed of trust is security has occurred, (5) the nature of the breach, (6) the sum owing on the obligation, (7) the election by the trustee to sell the property to satisfy the obligation, (8) the date, time, and place of the sale, and (9) the statement described in (e) of this

(continued...)

statutorily required supplemental notice,[30] CSSD received actual notice of the default and sale; under its governing policy, it declined to participate or otherwise protect its lien in the foreclosure process. Thomas received actual notice of the default and sale, but he neither attended nor sent a representative to the sale.

Joseph Casteel was interested in purchasing properties at foreclosure sales. Casteel's daughter was the Fidelity title officer handling Frelin's foreclosure of Elkins's property. Casteel is trustee of the Joseph P. Casteel Trust; his daughter is a trust beneficiary and a joint owner on his personal bank account. The title officer researched the property value, obtained approval from her supervisor for her father's trust to bid on the property, and arranged for a Fidelity representative to bid on the trust's behalf at the foreclosure sale. Fidelity had in other instances facilitated bidding for clients who were unavailable to bid in person. But Fidelity's representative later testified that Fidelity would not have let the title officer handle the foreclosure sale if it had known her father intended to bid on the property.

---

[29]    (...continued)
section describing conditions for curing the default.

[30]    Alaska Statute 34.20.070(d) provides:

If the State of Alaska is a subsequent party, the trustee, in addition to the notice of default, shall give the state a supplemental notice of any state lien existing as of the date of filing the notice of default. This notice must set out, with such particularity as reasonably available information will permit, the nature of the state's lien, including the name and address, if known, of the person whose liability created the lien, the amount shown on the lien document, the department of the state government involved, the recording district, and the book and page on which the lien was recorded or the serial number assigned to the lien by the recorder.

Casteel Trust was the only bidder at the nonjudicial foreclosure sale and purchased Elkins's property for $26,443.40, just $1 over Frelin's offset bid for the balance due on Elkins's promissory note. Casteel Trust was prepared to bid $107,000 at the foreclosure sale, but it limited its bid in the absence of other bidders. Including the senior lien obligations accepted by purchasing at the sale, Casteel Trust paid approximately 9% of the property's total estimated value.

## B. Relevant Proceedings

Mary subsequently filed a superior court complaint to enforce civil liability under AS 25.27.260;[31] she sought compensatory and punitive damages for violating AS 34.20.070(d)[32] and to set aside the foreclosure sale. She named as defendants Casteel Trust, Fidelity, Elkins, and all other lienholders. CSSD declined to participate, and Mary unsuccessfully sought to compel CSSD's participation. Mary ultimately stipulated to dismissal of her civil liability and damages claims.

Thomas filed a cross-claim asking that the superior court: (1) hold the foreclosure sale was voidable because of the "grossly inadequate" sale price; (2) impose a constructive trust on the property; (3) order that Casteel Trust reconvey the property to Elkins and that Fidelity schedule a new nonjudicial foreclosure sale; and (4) award him costs and attorney's fees.

Casteel Trust sought summary judgment dismissing Thomas's and Mary's claims to set aside the foreclosure.[33] The superior court agreed with Thomas's assertion

---

[31] AS 25.27.260 (establishing civil liability for failure to comply with child support lien against real property prior to sale).

[32] AS 34.20.070(d) (requiring supplemental notice prior to nonjudicial foreclosure sale when State has lien against property).

[33] *See* Alaska R. Civ. P. 56(c) (providing summary judgment is proper if
(continued...)

that the price disparity triggered a need to review the foreclosure proceedings to ensure no part of the sale was fraudulent, and the court based its summary judgment decision in favor of Casteel Trust on the following undisputed facts:

> (l) the failure to provide supplemental notice did not prejudice any party, as it is undisputed that [CSSD] otherwise received notice of the sale; (2) despite actual notice, Thomas failed to attend the sale to protect his own interest as a junior lienholder; (3) the successful bidder was prepared to pay more but was not required to do so due to the absence of other bidders; and (4) Casteel[] [Trust's] status as a bona fide purchaser entitles [it] to retain the property and allows the court to uphold the foreclosure.

The superior court concluded that the circumstances did not indicate fraud and that "the absence of a supplemental notice does not constitute a procedural error[] affecting the fundamental fairness of the transaction." The court further concluded that Fidelity's trustee's deed "meets all of the statutory requirements, and thus provides conclusive evidence that Casteel [Trust] is a bona fide purchaser."[34] Thomas sought reconsideration, which the court denied.

---

[33] (...continued)
"there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law").

[34] The court concluded that Casteel Trust was a bona fide purchaser for value without notice under AS 34.20.090(c):

> A recital of compliance with all requirements of law regarding the mailing or personal delivery of copies of notices of default in the deed executed under a power of sale is prima facie evidence of compliance with the requirements. The recital is conclusive evidence of compliance with the requirements in favor of a bona fide purchaser or encumbrancer for value and without notice.

The superior court then granted Casteel Trust summary judgment on Mary's claim to set aside the foreclosure sale, concluding that because CSSD had been the lienholder Mary was not a party in interest for a wrongful foreclosure claim. The court also referred to its decision dismissing Thomas's claim, noting that for the same reasons Mary's claim had no basis.

The superior court granted Casteel Trust prevailing party status against Mary and Thomas and entered final judgment. Mary initially appealed, but she dismissed her appeal after settling with Casteel Trust. Thomas appeals the summary judgment decision dismissing his claim against Casteel Trust.

## IV. STANDARD OF REVIEW

"We review the 'grant of a summary judgment motion de novo, affirming if the record presents no genuine issue of material fact and if the movant is entitled to judgment as a matter of law.' "[35] "[S]ummary judgment is appropriate only when no reasonable person could discern a genuine factual dispute on a material issue."[36] In making this determination all reasonable inferences are drawn in favor of the nonmovant, but a movant must present more than "unsupported assumptions and speculation."[37]

## V. DISCUSSION

Thomas contends that the foreclosure sale is voidable because the sale price was grossly inadequate and the failure to send CSSD supplemental notice was a procedural error. Thomas also argues that there was fraud by Fidelity and that Casteel

---

[35] *Farmer v. Alaska USA Title Agency, Inc.*, 336 P.3d 160, 162 (Alaska 2014) (quoting *Erkins v. Alaska Tr., LLC*, 265 P.3d 292, 296 (Alaska 2011)).

[36] *Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 520 (Alaska 2014).

[37] *Farmer*, 336 P.3d at 162 (quoting *Boyko v. Anchorage Sch. Dist.*, 268 P.3d 1097, 1103 (Alaska 2012)).

Trust is not a bona fide purchaser for value. For the following reasons, we affirm the superior court's decision upholding the foreclosure sale.

## A. Procedural Defect

Thomas contends Fidelity's failure to provide CSSD supplemental notice constitutes procedural error in the foreclosure process and that error, combined with a grossly inadequate sale price, warrants setting aside the sale. Not every failure to comply with statutory nonjudicial foreclosure requirements justifies the extraordinary equitable remedy of setting aside a foreclosure sale.[38] And although we recognize the importance of following statutory requirements, we also consider them in light of their purpose.[39]

Insufficient notice may warrant setting aside a voidable sale if fairness demands it. In *Rosenberg v. Smidt* we overturned a voidable sale due in part to insufficient notice.[40] In *Rosenberg* the trustee mailed foreclosure sale notice to the interest holders' prior address, but when it was returned as undeliverable the trustee made no attempt to find a current address.[41] The interest holders sued to overturn the sale, and the property's purchasers argued that due diligence in providing notice of default was not required and would increase costs.[42] We concluded it would be unfair

---

[38] *See, e.g.*, *Young v. Embley*, 143 P.3d 936, 948 (Alaska 2006) (deciding foreclosure proceeding validity based on statutory interpretation).

[39] *See, e.g.*, *Farmer*, 336 P.3d at 162 ("We 'apply our independent judgment to questions of law, adopting the rule of law most persuasive in light of precedent, reason, and policy.'" (quoting *Shaffer v. Bellows*, 260 P.3d 1064, 1068 (Alaska 2011))).

[40] 727 P.2d 778, 783 (Alaska 1986).

[41] *Id.*

[42] *Id.* at 782.

to uphold the sale because the trustee had not exercised due diligence in notifying the interest holders.[43]

Our decisions reflect a greater equitable interest in receiving initial notice than in receiving additional notice.[44] In *Farmer v. Alaska USA Title Agency, Inc.* the trustor defaulted and the trustee commenced foreclosure proceedings.[45] The trustor did not receive additional notice of numerous sale postponements.[46] Arguing that "equity required re-notice after each [sale] postponement and that the lack of re-notice violated his due process rights," the trustor sued to overturn the sale.[47] We affirmed summary judgment upholding the sale, determining that the trustor knew the sale was pending, did not appear at the first properly noticed sale, and therefore could not blame lack of notice for his failure to protect his interest.[48]

It is uncontested that Thomas received all the notice to which the law entitled him; he had actual notice of the sale, but he failed to take any action to protect his interest. The statutorily required supplemental notice protected only CSSD's

---

[43]    *Id.* at 783

[44]    *See, e.g.*, *Farmer*, 336 P.3d at 161-62 (involving additional notice of pending nonjudicial foreclosure sale); *Rosenberg*, 727 P.2d at 782-83 (involving initial notice of pending nonjudicial foreclosure sale).

[45]    336 P.3d at 161.

[46]    *Id.* at 162 (noting statute governing nonjudicial foreclosure process "requires re-notice to the debtor only when 'the foreclosure [is] postponed for more than 12 months.' " (alteration in original) (quoting AS 34.20.080(e))).

[47]    *Id.* at 161-62.

[48]    *Id.* at 162-64, 166.

interest,[49] and Thomas cannot claim CSSD's protection to protect his interest (which was senior to CSSD's interest).[50] We agree with the superior court that failure to provide CSSD supplemental notice did "not constitute a procedural error[] affecting the fundamental fairness of the transaction."

## B.    Sale Price

Thomas contends that the sale price of 7% of fair market value, or even 9% when considering the required satisfaction of senior liens, is grossly inadequate. Thomas relies on our *Baskurt v. Beal* decision affirming the superior court's decision to "set aside the sale on the grounds that it was void and voidable."[51] The purchasers in *Baskurt*, believing the property was "worth at least $250,000," brought cashier's checks totaling well over that amount to the foreclosure sale; they ultimately bid "$26,781.81, one dollar over the remaining debt on the property."[52] This equated to less than 15% of the property's estimated fair market value.[53] But, as Casteel Trust correctly points out, in *Baskurt* the primary interest holder was disputing the sale of two adjoining parcels when selling one parcel would have satisfied the debt. We recognized that "a trustee under a deed of trust is a dual fiduciary owing duties to both the trustor and the beneficiary"; those duties include taking "reasonable and appropriate steps to avoid sacrifice of the

---

**49**      *See* AS 34.20.070(d) (requiring supplemental notice setting out State's lien interest information in addition to default notice).

**50**      *See Farmer*, 336 P.3d at 163 n.20 (noting that those "who receive notice of [a] foreclosure sale[] . . . know that the property is threatened with foreclosure and have an obligation to stay informed of the status of the foreclosure process" (quoting *In re Nghiem*, 264 B.R. 557, 562 (B.A.P. 9th Cir. 2001))).

**51**      101 P.3d 1041, 1042 (Alaska 2004).

**52**      *Id.* at 1041, 1043.

**53**      *Id.* at 1046.

debtor's property and interest."[54] We affirmed setting aside the sale because the superior court correctly found that "[b]y conducting the sale in bulk rather than selling only one parcel, . . . the trustee failed in its duty to act reasonably to protect [the trustor]'s interests."[55]

Inadequate sale price alone generally is not enough to set aside a foreclosure sale, unless the sale price is so grossly inadequate that it shocks the conscience by creating a presumption of fraud or is combined with procedural irregularities.[56] A purchase price of less than 15% of market value may trigger an evaluation by the court to determine if anything untoward occurred in the sale process.[57] The superior court in this case engaged in such an evaluation; it determined that the "circumstances in this case do not indicate fraud in the foreclosure sale" and that there were no procedural irregularities creating unfairness. On the undisputed record before us, the court correctly determined that no basis existed to set aside the sale.

---

[54] *Id.*

[55] *Id.*

[56] *Id.* at 1044 ("[I]f the inadequacy of the sale price is (1) 'so gross as to shock the conscience and raise a presumption of fraud or unfairness,' or (2) is coupled with other irregularities in the sale procedures, then invalidation of the sale may be justified." (quoting *McHugh v. Church*, 583 P.2d 210, 213-14 (Alaska 1978))); *see also Farmer v. Alaska USA Title Agency, Inc.*, 336 P.3d 160, 165 (Alaska 2014) ("[M]ere inadequacy of price is generally not sufficient by itself."); NELSON ET AL., *supra* note 14, § 7.22, at 645 ("All jurisdictions adhere to the recognized rule that mere inadequacy of the foreclosure sale price will not invalidate a sale, absent fraud, unfairness, or other irregularity.").

[57] *See Baskurt*, 101 P.3d at 1046 ("The fact that the foreclosure purchase price . . . was less than fifteen percent of the sale price indicates that the gross inadequacy standard was met.").

## C. Fraud

Thomas raised the issue of fraud before the superior court; he suggests in his reply brief that fraud occurred, although fraud is not a point expressly raised in his appeal. The superior court determined no fraud occurred because "Thomas was aware of the sale, and . . . [t]here is no evidence that [Thomas's] absence at the sale was fraudulently induced."

In *McHugh v. Church* we outlined irregularities that might suggest fraud or an otherwise unjust result that might justify setting aside a foreclosure sale:

> If the sale has been attended by any irregularity, as if several lots have been sold in bulk where they should have been sold separately, or sold in such manner that their full value could not be realized; if bidders have been kept away; if any undue advantage has been taken to the prejudice of the owner of the property, or he has been lulled into a false security; or, if the sale had been collusively, or in any other manner, conducted for the benefit of the purchaser, and the property has been sold at a greatly inadequate price, the sale may be set aside, and the owner may be permitted to redeem.[58]

The record in this case suggests some potentially questionable behavior on Fidelity's part, given that its representative handling the foreclosure and facilitating Casteel Trust's bid was Casteel's daughter, but nothing rising to the level of fraud sufficient to set aside a voidable sale. Unlike the situation we described in *McHugh*, as trustee Fidelity conducted the sale in accordance with its contractual duties to Elkins and Frelin; Fidelity had no obligation to protect junior lienholders.[59] There is no evidence that Fidelity conducted the sale in a manner that unduly benefitted Casteel Trust; Frelin received the

---

[58] 583 P.2d at 213.

[59] *See id.* at 218 ("[T]he trustee . . . owes a duty both to the trustor and the beneficiary of the trust to perform impartially . . . .").

full amount of his secured interest, Elkins did not contest the foreclosure sale, and Thomas was given sufficient notice of the foreclosure process that, had he wanted to, he could have participated to protect his judgment lien on the property. Thomas's suggestion of fraud sufficient to set aside the foreclosure sale is unsupported.

### D. Bona Fide Purchaser

The superior court also held that on the undisputed facts in the record Casteel Trust was a bona fide purchaser for value who took title clear of Thomas's allegations of irregularity. Thomas contends that Casteel Trust's bona fide purchaser status is defeated because (1) Fidelity failed to provide CSSD the statutorily required supplemental notice and (2) Casteel Trust was prepared to bid a higher amount, proving actual knowledge that its bid was grossly inadequate. Thomas argues that because Casteel Trust is not a bona fide purchaser, the sale can and should be set aside. Because we conclude the sale was not voidable, we do not need to address Casteel Trust's status as a bona fide purchaser.

## VI. CONCLUSION

The superior court's decision is AFFIRMED.